# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | : : : | 1: 14-cv-00049 |
| Plaintiff, | : : | Hon. John E. Jones III |
| v. | : : | |
| MARTI B. SCALIA, | : : | |
| Defendant. | : | |

## **MEMORANDUM**

## **December 9, 2014**

Presently pending before the Court is Plaintiff's Motion for Summary Judgment. (Doc. 18). The Court will grant this Motion, as more fully set forth and articulated herein. Also pending is Plaintiff's Motion to Strike (Doc. 24), which is denied.

## I.     PROCEDURAL HISTORY

On January 13, 2014, Plaintiff State Farm Fire and Casualty Company ("State Farm") filed a Complaint, seeking a declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, that it has no obligation to defend Defendant Marti Scalia ("Scalia") in a state court action that has been brought against him by another person, Jackie Alexander ("Alexander")

1

(Doc. 1). Additionally, State Farm seeks a determination that because it has no duty to defend Scalia, it also has no duty to indemnify him in the underlying state court action.

On June 17, 2014, State Farm filed a Motion for Summary Judgment and a brief in support of its Motion. (Docs. 18 & 19). Scalia filed his brief in response to the Motion for Summary Judgment on July 10, 2014. (Doc. 21). Both parties filed Statements of Material Fact with regard to the Motion. (Docs. 20 & 22). With its Statement of Material Facts, Scalia also filed a Response to Plaintiff's Statement of Material Facts. (Doc. 22). State Farm then filed a Reply on July 16, 2014 (Doc. 26), to which Scalia filed a Sur-Reply on July 23, 2014. (Doc. 28-1). State Farm was granted permission to file a Reply to the Sur-Reply, and accordingly the Court accepted its Reply on November 24, 2014. (Doc. 32).

The Motion for Summary Judgment has been fully briefed and statements of material fact have been filed and answered. The Motion is thus ripe for our review.[1]

---

[1] On July 14, 2014, State Farm filed a Motion to Strike, arguing that the Court should strike Scalia's Response to State Farm's Motion for Summary Judgment because it was not timely filed, or alternatively, that the Court should strike Subsection II.C. of Scalia's Response because it impermissibly asserts the defense of failure to join an indispensable party. (Doc. 24). Scalia filed a Response to the Motion to Strike on July 21, 2014. (Doc. 27). The Court will deny this Motion. Scalia correctly asserts that this Court provides an extra three days for a party to file his brief in opposition to a motion for summary judgment when the party files his responsive pleading electronically. *See, e.g., Dietz v. National City Mortg. Co.*, 2008 WL 2857722 (M.D.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. Civ. P. 56(a). A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and should not evaluate credibility or weigh the evidence. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-

---

Pa. July 21, 2008). Regarding Subsection II.C. State Farm argues that Scalia's discussion of his defense of failure to join an indispensable party should have been raised in earlier pleadings or a motion to dismiss, and that his belated discussion of the issue at the summary judgment stage of proceedings is inappropriate. Although the Court would have much preferred to address this defense separately at an earlier stage of proceedings, we do find that Scalia preserved this defense by including it, however summarily, in the Affirmative Defenses section in his Answer. (Doc. 9). Furthermore, the defense has been fully briefed by the parties.

movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial. *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. Civ. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

## III. STATEMENT OF FACTS

Most, if not all, of the facts that are material to this Motion in the instant case are undisputed. The following facts are undisputed by the parties:

Marti B. Scalia was issued a Homeowners Policy (#38-LC-9279-8)

("Policy") for the period May 21, 2010 through May 21, 2011. (Doc. 20, ¶ 1). The Policy does provide personal liability coverage, but with limitations. (*Id.*, ¶ 2). The exact language of the Policy and what kind of personal liability it covers will be discussed at length at a later point in our analysis.

Scalia was sued in a personal injury action by Jackie C. Alexander. This action was filed in the Pennsylvania Court of Common Pleas for Huntingdon County ("Underlying Action"). The case is captioned *Alexander v. Scalia*, No. 2010-1787. (*Id.*, ¶ 5).

In Alexander's Amended Complaint, she alleges in Count I that, on October 29, 2010, while driving on the highway and then while at Scalia's personal residence, Scalia "violently struck [Alexander] on and about various parts of her body with great force and violence, pulled [Alexander] from her car, pushed and shoved [Alexander] and knocked [Alexander] to the ground." (*Id.*, ¶ 7). Her Amended Complaint refers to this incident as an "assault and battery," which she alleged caused her various bodily and psychological injuries. (*Id.*, ¶ 8). Count II of her Amended Complaint seeks punitive damages against Scalia as a result of this alleged assault and battery. (*Id.*, ¶ 10). The Amended Complaint further alleges that Scalia's actions were "careless, reckless, wanton, and willful" and "constitute careless, reckless, wanton, willful misconduct and a reckless indifference" to

5

Alexander's interests. (*Id.*, ¶ 11).

Scalia submits additional evidence in an attempt to contest this Motion. He submits copies of State Farm's Claim Notes, correspondence between his defense counsel and a State Farms claims representative, State Farm Section Manager Status Reports, and a copy of the transcript from Scalia's criminal trial regarding this same incident. (Doc. 22). All of these exhibits ultimately seek to dispute the facts of the underlying incident between Scalia and Alexander, and seek to argue that there was not in fact an assault and battery but rather Alexander may have caused her own injuries due to alleged intoxication. (*Id.*).

## IV. DISCUSSION

### A. Whether State Farm Failed to Join an Indispensable Party

First, the Court must consider whether State Farm's failure to join the plaintiff in the underlying civil action, Jackie C. Alexander, constitutes failure to join an indispensable party, warranting dismissal of the case.

Federal Rule of Civil Procedure 19 dictates the requirements for a third party to be considered indispensable to an action and thus must be joined in order for the federal action to proceed. The section of the Rule applicable to the instant case states that a person must be joined if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's

absence may: i) as a practical matter impair or impede the person's ability to protect the interest." FED. R. CIV. P. 19(a).

Scalia argues that Alexander is an indispensable party to the instant federal action because under state law precedent governing the issue, it is required that the person asserting the underlying claims against the insured be joined as indispensable party in a declaratory judgment action on the issue of coverage between the insured and the insurer. Scalia cites to *Vale Chemical Co. v. Hartford Accident & Indem. Co.*, 512 Pa. 290 (Pa. 1986) as providing the binding precedent. State Farm contends that *Vale* does not bind federal courts, because *Vale*'s rule concerning joinder of indispensable parties in this type of case constitutes procedural, not substantive, law, and thus is not binding on federal courts sitting in diversity jurisdiction, under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), citing to *Liberty Mutual Insurance Co. v. Treesdale, Inc.*, 419 F.3d 216, 228 (3d Cir. 2005).

In *Treesdale*, the Third Circuit affirmed a district court's denial of intervention and joinder to injured parties in an insurance coverage declaratory judgment action between an insured and its insurer. In considering whether state law on joinder of indispensable parties governed, the Third Circuit concluded that "*Vale* did not announce substantive principles of law for Pennsylvania courts to

apply in insurance coverage disputes. Rather, *Vale* addressed procedural and jurisdictional issues." *Treesdale*, 419 F.3d at 229. In federal courts, then, while state law is instructive in determining "the interests of those affected by the litigation, joinder pursuant to Rule 19 is ultimately a question of federal law." *Hartford Casualty Ins. Co. v. Cardenas*, 292 F.R.D. 235, 241 (E.D. Pa. 2013).

In his briefs, Scalia painstakingly attempts to argue that *Treesdale*'s holding is narrow and that it serves as precedent only for intervention cases. However, the Third Circuit did directly address Rule 19 joinder in *Treesdale*. The court stated that the third parties seeking to intervene could not qualify as "necessary parties" under Rule 19 because "their interest does not relate[] to the subject of the action." *Id.* at 230 (internal citations omitted). "Under Fed. R. Civ. P. 19(a)(2), a party is only 'necessary' if it has a legally protected interest, and not merely a financial interest, in the action." *Id.* (internal citations omitted). The court found that the third parties did not have a "legally protectable interest" in the insurance policies at issue. *Id.* Scalia is effectively asking us to ignore a sizeable portion of the Third Circuit's opinion in *Treesdale* that discusses the type of interests a third party must have in a case in order for joinder to be required. We refuse to find the Third Circuit's broader discussion of joinder and legally protectable interests superfluous.

Additionally, the Third Circuit stated that it is a "general principle" that "a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene. Thus, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene." *Treesdale*, 419 F.3d at 224. Although the court there discussed this principle in the context of intervention of third parties, its reasoning would naturally seem to apply to joinder of indispensable parties under Rule 19. If the Third Circuit does not find that a third party's economic interest in a lawsuit is enough to support a motion to intervene, it would be illogical for the court to find a party "indispensable" under Rule 19 by virtue of the fact the party has an economic interest in the lawsuit between the insured and insurer.

Scalia does correctly point out that recent Third Circuit standing jurisprudence concerning the definition of "legally protected interests" invites confusion as to whether *Treesdale* is still good law on this topic in the context of Rule 19 joinder. In *American Automobile Insurance Company v. Murray*, 658 F.3d 311 (3d Cir. 2011), the court held that an injured third party (who was not the insured) who had been named as a defendant in an insurance company coverage declaratory judgment action had standing to appeal the district court's order in that underlying action that was brought by an insurer against its insured. The court

applied the *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), test for standing, which requires the person to have an "injury in fact," defined as a "concrete and particularized invasion of a legally protected interest..." *Murray*, 658 F.3d at 318. Applying this test and the controlling case in the Third Circuit on whether injured parties have standing in a declaratory judgment action in the insurance coverage context, *Federal Kemper Insurance Co. v. Rauscher*, 807 F.2d 345 (3d Cir.1986), the court in *Murray* found that the directly injured third party's interests in the lawsuit were independent of the insured and that he did have a "particularized interest in the lawsuit because a determination of Murray's coverage would dictate its ability to receive the full benefit" of the lawsuit. *Id.* at 319. In other words, at least for purposes of standing, the financial interests of a third party related to a declaratory judgment action between an insurer and its insured may qualify as "legally protected interests."

In *Hartford Casualty Ins. Co. v. Cardenas*, the district court recognized the lack of clarity in Third Circuit jurisprudence over whether financial interests alone in insurance disputes qualify as a basis for joinder under Rule 19(a)(1)(B) in light of its recent standing jurisprudence. There, the court provided a lengthy and quite comprehensive discussion of the seemingly competing precedents of *Treesdale* versus *Murray* and *Rauscher* in terms of which precedent should direct its Rule 19

analysis, ultimately concluding that *Treesdale* was the proper precedent. *Hartford Casualty*, 292 F.R.D. at 242-246. We find the court's logic and reasoning in *Hartford Casualty Insurance Co.* to be persuasive and do not feel the need to repeat its analysis at length in the instant matter. The court summarized its reasoning as follows:

> "The Court is aware of no cases in which the Third Circuit applied the standing analysis to determine the existence of a legally protected interest under Rule 19(a)(1)(B). To the contrary, review of *Rauscher*, *Treesdale*, and *Murray* reveals that standing and Rule 19 analyses are fundamentally different, and it would be an unwarranted expansion of the holdings in *Rauscher* and *Murray* to treat them as precedent for Rule 19(a)(1)(B)." *Id.* at 244.

Applying *Treesdale* then to the case *sub judice*, the question becomes whether the plaintiff in the underlying tort case, Alexander, has a "legally protected interest" in this declaratory judgment action in order for her to be considered an indispensable party under Rule 19. Scalia's sole argument on this issue appears to be that Alexander's underlying civil suit against Scalia is her legally protected interest in this case. As a point of fact, Scalia does not even directly assert that Alexander has a financial interest in the instant case. Regardless, Alexander may have a financial interest in the scope of Scalia's insurance coverage in that if the alleged incident between her and Scalia was covered under the policy, she would have a greater possibility of recovery of the judgment against him; however, as

*Treesdale* discussed, a financial interest alone in the insurance coverage declaratory judgment action is insufficient. Especially considering that Alexander has not won the underlying civil action and may or may not even be pursuing it, she does not have a legally protected interest in Scalia's insurance policy he bought from State Farm. Alexander has only a contingent financial interest. The impact of this action on Alexander is purely "collateral" and "speculative." *Treesdale,* 419 F.3d at 225.

Lastly and importantly, we note that Alexander herself has expressed no interest in this case, nor has she evinced a desire to intervene. It appears beyond peradventure that Scalia's last minute argument to have her joined in this federal action is little more than an attempt to delay its resolution on the merits. In that endeavor Scalia has also failed.

### B. Whether Summary Judgment is Appropriate

The interpretation of an insurance policy, and thus whether a particular loss falls under its coverage, is a question of law. *See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006) (internal citations omitted). As with any contract interpretation, our duty is to "ascertain the parties' intentions as manifested by the policy's terms." *Id*. If the language of the policy is clear, we must abide by those terms and given them effect. On the other

hand, if the terms at issue are ambiguous, the terms are to be construed in favor of the insured in a declaratory judgment action such as this. *See id.* With regard to the duty to defend, it has been long established in Pennsylvania law that "the obligation of a casualty insurance company to defend an action brought against the insured is to be determined *solely* by the allegations of the complaint in the action. . . ." *Id.* at 896 (quoting *Wilson v. Maryland Casualty Co.*, 105 A.2d 304, 307 (1954)(emphasis added in *Kvaener*)).

Thus, there is a two-step process in a declaratory judgment action concerning insurance coverage. A court first determines the scope of the policy's coverage, as outlined above. Second, a court analyzes the underlying complaint and its factual allegations in order to decide whether it triggers coverage under the terms of the policy. *General Acc. Ins. Co. of America v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997).

Accordingly, although many exhibits have been submitted by Scalia, mostly contesting whether an assault and battery actually occurred or whether Alexander's injuries were a result of her own intoxication or carelessness, the documents that are dispositive in a case such as this are the underlying complaint filed by Alexander against Scalia and the State Farm insurance policy bought by Scalia. In order to dispose of this Motion, we must consider the language of State Farm's

policy to determine the instances in which they will provide coverage and those in which coverage is not provided, and then examine Alexander's complaint to determine whether the allegations set forth therein trigger coverage.

We first then turn to the pertinent portions of the Policy to determine when State Farm would be required to defend and indemnify Scalia. Those portions state the following:

> **COVERAGE L- PERSONAL LIABILITY**
>
> If a claim is made or a suit is brought against an insured for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:
>
> > 1. Pay up to our limit of liability for the damages for which the **insured** is legally liable; and
> >
> > 2. Provide a defense at our expense by counsel of our choice...Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability. (Doc. 1, Ex. A; Doc. 20, ¶ 2) (emphasis in original).

The term "bodily injury" is defined in the Policy as follows:

> "bodily injury" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom. (Doc. 1, Ex. A; Doc. 20, ¶ 3).

The operative term for coverage for the insured for damages due to bodily injury or property damage is that such injury or damage must be caused by an "occurrence." This is what is known as an occurrence policy in the insurance business. The

"Definitions" section of this Policy defines "occurrence" as follows:

> 7. "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:
>
> a. **bodily injury**; or
> b. **property damage**;
>
> during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**. (Doc. 1, Ex. A; Doc. 20, ¶ 4) (emphasis in original).

Simply put, then, the bodily injury at issue in the matter *sub judice* needs to have been caused by an "accident" in order for State Farm to be responsible for damages. Although this Policy does not define the term "accident," many courts have been called on to construe what the term means in the context of occurrence policies issued by insurance companies. The Pennsylvania Supreme Court defined the term "accident" in this context to mean something that happens "unexpectedly or unintentionally," and that the term "implies a degree of fortuity." *Kvaerner*, 908 A.2d at 898.

Willful and malicious assaults are intentional torts; they are not accidents. *Gene's Restaurant, Inc. v. Nationwide Ins. Co.*, 548 A.2d 246, 247 (Pa. 1988). *In Gene's Restaurant, Inc. v. Nationwide Ins. Co.*, the Pennsylvania Supreme Court examined a similar case in which it had to determine whether the insurance company's occurrence policy at issue covered a willful and malicious assault

alleged in the underlying complaint. The court found that under the occurrence policy, an "occurrence" was an "accident," and that because the assault was an intentional tort, it could not be considered an accident, and therefore was not covered by the policy and the insurer had no duty to defend. *Id.*

To determine, then, whether State Farm's policy covers the event between Scalia and Alexander at issue, we must determine whether the factual allegations of the underlying complaint against Scalia allege an "accident" resulting in bodily injury. Alexander alleged that Scalia "violently struck" her with "great force and violence, pulled the Plaintiff [Alexander] from her car, pushed and shoved the Plaintiff and knocked the Plaintiff to the ground." (Doc. 1, Ex. B). There is no factual allegation that suggests Scalia's actions were unintentional or fortuitous. Alexander's complaint ultimately makes out a claim for the intentional tort of assault and battery, which inherently does not suggest an accident. Manifestly, a clear reading of the complaint demonstrates that it describes a wanton assault intentionally perpetrated upon Alexander by Scalia. Thus, this event is not covered under the policy, and State Farm owes no duty to defend.

Scalia points to evidence, in the form of State Farm's Claim Notes, that Alexander was intoxicated at the time of the event in question and suggests that is the reason she fell and injured herself, and further points to the Claim Notes

indicating that Alexander gave at least three different versions of the story of what happened between her and Scalia. However, while this evidence may be relevant in deciding the merits of the civil tort action against Scalia, it is not relevant to the determination of whether State Farm is required to defend and indemnify Scalia. As discussed in detail above, the law requires the Court to consider only the terms of the State Farm policy at issue together with Alexander's complaint.

Additionally, Scalia argues that even if Pennsylvania law follows the "four corners" rule that an insurance company's duty to defend is governed by the allegations of the underlying complaint, he believes his case falls within an exception to that rule. Scalia cites the exception that where an insurer is on notice that the underlying complaint may be amended in a way that may bring it within the scope of the coverage of the insurance policy, the insurance company maintains a duty to defend, even if ultimately there is no duty to indemnify. *See Heffernan & Co. v. Hartford Ins. Co. of America*, 614 A.2d 295, 298 (Pa. Super. Ct. 1992). However, *Heffernan* clarified, by citing the Pennsylvania Supreme Court case of *Cadwallader v. New Amsterdam Casualty Co.*, 152 A.2d 484 (Pa. 1959), that a court must look to whether the complaint in question *"comprehends an injury which may be within the policy,"* that is, if the complaint contains factual allegations which would support recovery under the policy. *Id.* at 297-98

(emphasis added). Scalia contends that it is likely that Alexander will amend her claim to allege negligence and thus State Farm should be obligated to continue to defend Scalia.[2] However, no factual allegations in Alexander's complaint support this claim. To reiterate, the factual allegations solely allege intentional violent acts on the part of Scalia. Thus, even if this "exception" to the general four corners rule is binding law, which we find far less than clear, this case does not fall within it.[3] As State Farm points out in its reply brief, the general rule of civil procedure that complaints may be amended cannot be manipulated to essentially require insurers to defend every complaint ever filed based on the mere possibility that at some point in the future, the underlying plaintiff may amend his or her complaint to allege a potentially covered claim. Such a rule would be highly burdensome to insurers, and would quite likely drive up the costs of insurance for policyholders.

Even viewing the facts in the light most favorable to Scalia, we cannot conclude that a reasonable jury would have a sufficient evidentiary basis to find in his favor. Once again, the only evidence that must be examined in this case is the

---

[2] Notably, despite the existence of this ardently litigated federal declaratory judgment action that implicates the express language of her complaint, Alexander has chosen not to amend it.

[3] Furthermore, the mere usage of legal terms such as "negligence" and "recklessness" in a complaint are not determinative of coverage. The factual allegations of the complaint, and whether they "comprehend an injury which is actually or potentially within the scope of the policy," determine whether the insurer is obligated to defend. *Erie Ins. Exchange v. Muff*, 851 A.2d 919, 926 (Pa. Super. 2004).

insurance policy and the underlying complaint against the insured. Scalia does not contest the accuracy of the exhibits of the policy and underlying complaint submitted to the court. We have found the language in the policy and Alexander's complaint to be quite straightforward, in that the only reasonable interpretation to be taken from the two documents, read together, is that the intentional tort alleged cannot be considered an accident, and thus State Farm cannot be required to defend and indemnify Scalia.

Moving to the issue of punitive damages, based on the foregoing discussion and our determination that State Farm is not obligated to defend or indemnify Scalia, it logically follows that State Farm will not have to cover any possible punitive damages awarded against Scalia under the policy at issue. But as a point of law, State Farm is correct in its briefing that insurers do not have a duty to indemnify an insured with regard to an award of punitive damages. *See Aetna Cas. and Sur. Co. v. Roe*, 650 A.2d 94, 100 (Pa. Super. 1994).

## V.     CONCLUSION

Accordingly, the Motion for Summary Judgment shall be granted. The Court will enter a declaratory judgment that State Farm has no obligation to defend Marti B. Scalia with regard to the claims asserted against him in the underlying action in state court to which he has been named a defendant. The Court will further enter a

declaratory judgment that State Farm has no obligation to indemnify Scalia with regard to the claims asserted against him in the underlying action.

An appropriate order shall issue.